Colcock, J.,
dissented:
In determining this question, it is not only necessary to advert to the language of the Act, but to the object and intent of it. Its preamble states, that “ whereas many inconveniences and injuries have frequently happened in the defect of the recovery of debts where the debtor is absent, or willingly absconds, or withdraws himself out of the limits and jurisdiction of this Province, having property therein;” “for remedy and prevention of which,” &c., “Be it enacted, that from and after the passing this Act, any person whatsoever having occasion to commence any suit or action in the Court of Common Pleas, against any person whatsoever, residing or being without the limits of this Province, shall by himself, or his attorney, petition the chief justice, state his demand, and that the debtor is *absent from and out of the limits of this Pro-vinee, and procure an attchment against his goods,” &e. It L being found inconvenient to apply to a judge for an attachment, the law in this particular has been altered, and the clerks of the Court are authorized to issue them upon the applicant’s giving bond in doable the *568 amount of the sum sued for, conditioned to pay any damages which may result from illegally obtaining the attachment. Having granted this remedy, it seems to have been an object with the Legislature to secure its citizens against its abuse. Ror this purpose, they were required to go before the chief justice, or some other judge, set forth their demand, in other words, show that they had a demand, and state that the debtor was absent from the State, upon which the writ issued. The Act speaks of two classes of debtors, those residing out of the State, and those absconding from, and leaving the State; as to the first, something like absolute certainty could be obtained as to their being within the State, but as to the latter, it is morally impossible, in many instances, until it would be too late to derive any benefit from this process. The first attachment has priority; hence, when a man in trade absconds, all being anxious to secure their demands, resort to this remedy. In this state of things, would it not be a mockery in the law, to say to a creditor, you shall have your remedy the moment your debtor crosses the line, but if you are one moment too soon, the process shall not avail you ? How is he to ascertain it ? I say, then, that all which the law can require, is a reasonable probability.
Again, I have said we must advert to the object of the law to explain its language. Now, the express object of this Act is to make the defendant a party in Court; if he put in bail within a year and a day, the attachment is dissolved, and the goods restored. If he appear within two years and disprove the debt, he shall recover damages against the attaching creditor. With all these guards upon his rights, and the bond *3271 now I ask, if a defendant should be permitted* to come -I in and dissolve an attachment which has been issued upon his own declaration that he was without the State ?
In this case a number of affidavits were read; time does not permit me to do more than briefly state the substance of them. There was also produced an advertisement, in which the defendant gave notice that he meant to leave the State for some time, which was dated-- May, 1819, and that his wife would transact his business during his absence. The affidavits showed, that on the 17th May, defendant disappeared; that he was seen by one under such circumstances as to excite suspicion, and cause an explanation, when he acknowledged that he owed some debts, and wished to avoid the Court. That he inquired of another the way out of town, and made the same acknowledgment to him ; that on the 18tb and 19th, application was made at his store to his wife, and the person supposed to be his brother, for the payment of debts, and an inquiry made where the defendant was, to which they both replied at different times, that he was gone to the northward, to New York, and refused payment. After the attachments issue, the defendant appears, makes an affidavit that he was near the city, at a Mr. Livingston’s, on the day on which the attachments issued, and he, Livingston, swears to the same fact. Upon the facts, there can be but one opinion ; that the defendant, intending to deceive and defraud his creditors, induced them to believe that he was gone to the northward, while he lay secreted in the vicinity of the town. I say secreted, for it is clear that his creditors were active in searching for him in the suburbs of the town. Is he then to be permitted to take advantage of this conduct, to the injury of just *569 claimants, and that too when no possible injury can result to him ? There were domestic attachments issued two or three days after the foreign, when perhaps his other creditors had heard something of him, so that the probability is, that these first attaching creditors will not only lose their lien, but lose their debts.
*But I consider this point determined by the case of Grisham v. Deal, ante, 130, lately decided at Columbia. That was a case *-'' "lS of domestic attachment. The plaintiff swore that the defendant was about to abscond, entered into bond, and obtained his attachment. The defendant offered affidavits to show, that he did not intend to remove, with a view to quash the attachment. This motion was rejected. The Court said he, the plaintiff, may have believed it; if he has been guilty of perjury, let him be indicted or sued on his bond. And, for myself, I add, that in that case, as well as in this, I was influenced by the consideration, that the party, plaintiff, having complied with all the requisites of the law, in good conscience, and solely with a view to obtain a process, by which to bring the party into Court, as far as we could know, and having obtained the writ, it cannot be quashed upon the ground that the plaintiff was mistaken.
I am aware, that it may be answered, that here a fact is to be proved, in that case it was a matter of opinion, but it at last resolves itself into this, not whether the fact existed, but whether the plaintiff conscientiously believed it.
Bay, Johnson and Colcock, JJ., concurred.
N. B. — The Court were equally divided, but as the case was tried on the circuit by Mr. Justice Colcock, Mr. Justice Richaedson’s is the opinion of the Court.
10 Rich. 15 ; 4 Strob. 292; 1 McC, 331; 5 Rich. 64.